Please call the next case. Case number 18-0992. Gerald Burnett v. Workers' Compensation Comm'n May it please the court. Mr. Mueller. My name is Bruce McSorin. I represent Gerald Burnett. The arbitrator concluded that Mr. Burnett does have obstructive airways problems. Dr. Paul diagnosing emphysema. Dr. Tudor diagnosing chronic bronchitis, both of which are COPDs. She found that these obstructive conditions are subject to the three-year statute of limitations for COPD. She noted a strong connection between smoking and obstructive diseases, and that there's nothing in the records of Burnett's cardiologists that reflects a diagnosis of occupational lung disease or pneumoconiosis. For pneumoconiosis, she adopted the opinions and reports of Dr. Tudor, Dr. Wyatt, and Dr. Shipley. The claimant argues that the arbitrator's selection of Dr. Tudor, Wyatt, and Shipley as having been the most credible was against the manifest way of the evidence, not because of who they are, but because of what they found. He also argues that a finding of no pneumoconiosis is against the manifest way of the evidence. And he further argues that while there is a general three-year statute of limitations for COPD, when a claimant has pneumoconiosis, the obstructive disease must be evaluated in light of the nature of the pneumoconiosis. However, I'll tell you at the outset, Mr. Burnett's case depends entirely on his ability to convince you that the commission decision that there was no pneumoconiosis was against the manifest way of the evidence. I'm making no arguments on the three-year statute of limitations except as they would apply in a pneumoconiosis case. I'm also making no arguments today regarding the role of cigarette smoking in a disease except pneumoconiosis. Other than this relatively limited argument, the appellate was going to rest on his brief. Now, as to the existence of pneumoconiosis, arbitrator Lindsay said that she adopted the well-qualified opinions and reports of Dr. Tudor, Dr. Wyatt, and Dr. Shipley for a finding of no pneumoconiosis. The problem is that that's just about impossible under this record. Dr. Tudor, well-qualified, he's the only one in the record who took the B-reader test, failed it, and never took it again. Now, for Monterey, Dr. Wyatt found absolutely nothing on the chest X-ray. It was clear. But he was the only one to find that. Dr. Tudor found bronchiectasis. Dr. Tudor's radiology department found basilar scar or atelectasis. Dr. Shipley found moderately extensive, predominantly fibrotic interstitial lung disease. For the claimant, Dr. Chopra is a primary care physician, and five of his X-rays found either interstitial changes, interstitial fibrosis, or opacities. Dr. Paul found pneumoconiosis with multiple small nodules and minimal fibrosis. And Dr. Smith found pneumoconiosis with minimal fibrosis. Either Dr. Wyatt or everybody else has to be wrong. Now, if Tudor and Shipley had also found nothing on the X-ray, I couldn't say this, but they did. Whatever it was, whatever they called it, they saw something. Dr. Tudor's radiologist called it basilar scar or atelectasis, and Dr. Shipley called it extensive interstitial fibrosis. The universal testimony is that the tissue reaction of pneumoconiosis is fibrosis and emphysema. And another word for fibrosis is scar. When you look at the reports of the four readers on respondent side of the fence, you could be looking at the X-rays of four different people. But at least two of those four found scar or fibrosis, as did Dr. Paul, Dr. Smith, and the five readers for Dr. Chopra. Now, what if the commission had said that they knew that Dr. Wyatt found the X-ray to be clear, but they chose him anyway over the other two readers for respondent, the two readers for claimant, and the five readers of Dr. Chopra? Would that support a challenge? I don't know. Maybe. What did Shipley say about the size and location on his examination of the irregular nodules? What did he say about them? They're basilar. He also said they were upper zone, predominantly small, and pneumoconiosis. Dr. Shipley said that? Yeah. He said, continued, these do not have the typical appearance of large opacities of pneumoconiosis because of their location, lack of small round opacities in the background, and the presence of air bronchiograms. It was kind of confusing to me. My point is not what he found in arguing that what he said it was had to be pneumoconiosis. Here's my point. Dr. Wyatt saw nothing. He saw zero. Absolutely. And the other guys saw something. They called it something. If one guy is right, the other three are wrong. If number two is right, the other three are wrong. Let's assume, though, that's true, and you've argued cases on both sides. So arguably you have a conflict in the evidence. There's a long line of cases that say conflicts, particularly with medical evidence, is a matter that great deference is owed to the commission on these matters. So you've got the three doctors. You've got the doctor on the other side. Is that not an invitation for us basically to reweigh the evidence? Well, you know, this is my question to you. Like I said, if they had all found the same thing as Wyatt, there's no argument here. But if the commission said that Dr. Wyatt found it clear, the others found something else, but we agree with Wyatt, they think they're all wrong, and they would have chosen one against six or seven, would that withhold a challenge? And I'm saying I don't know. It might, because there is evidence in the record. And that's the test, right. So I have to bring the cases here. You make those decisions, and I'm happy to deal with them. That's not all on the pneumoconiosis. The obstruction is also consistent with physiologically significant pneumoconiosis. The reduced effusing capacity is consistent with physiologically significant pneumoconiosis. And the symptoms of shortness of breath are consistent with clinically significant pneumoconiosis. Under this record, there's only one doctor who didn't find at least one abnormality that's consistent with pneumoconiosis. Now, what was happening in the six or seven years before this 3U statute ran? Well, his primary care physician, Dr. Chopra, was treating him for COPD, chronic bronchitis, emphysema, asthma. He had Mr. Burnett on Advair, Amazeport, Combivent, Prednisone. Dr. Chopra and others continued to treat Mr. Burnett as he fought his cancers. And between October 2008 and September 2011, Dr. Chopra had the five x-rays, and every one showed exactly what you find with pneumoconiosis. Interstitial changes, fibrosis, opacities. As both experts testified, that's all pneumoconiosis is, interstitial fibrosis. And it shows up on an x-ray as opacities. That's what showed up on every treatment x-ray. Now, was Dr. Chopra treating claimant for his pneumoconiosis? He testified he thought he was. He intended to. The Advair, Combivent, Amazeport, and Prednisone were to treat Mr. Burnett's obstructive disease, which Dr. Chopra thought was from all of his diagnoses, including pneumoconiosis. The evidence is uncontroverted. Pneumoconiosis can result in the obstructive defect, and he had one. It also can result in a decreased diffusing capacity, and he had one. Now, that's all I've got to say about pneumoconiosis, but I want to take a couple minutes on that three-year statute of limitations. And I repeat, if my argument is not persuasive on the pneumoconiosis, then the rest of this argument is justified. As to that three-year statute of limitations, once you have pneumoconiosis, the rest come in, too. If there's no pneumoconiosis, they don't. They don't have to come in by name. They come in because of what they are in the body. They come in because they all contribute to the same impairment. They come in because under the law and under this record, there's no way to apportion their relative contributions. In other words, does COPD come in? Does chronic bronchitis come in? No, not by those names. There's a three-year statute on that. However, they have the same abnormalities that pneumoconiosis has, and therefore they're intertwined with no way to apportion them. So if you have pneumoconiosis and you have these other things, it breaks that statute of limitations. They come in because of pneumoconiosis. Dr. Tudor said that the PFTs will tell you the kind of impairments you have, whether it's obstructive or restrictive, and how severe, but they can't tell you what caused them. The commission found that all of claims of obstructive disease were caused by smoking, but that can only be true if there's no pneumoconiosis, because if there is pneumoconiosis, it's not caused by smoking, and therefore the damage that it has that bleeds over into these other diseases, also that part is not caused by smoking, even if you thought that the chronic bronchitis, COPD, emphysema were caused themselves 100% by smoking. So Long's claims pneumoconiosis is a causative factor in the emphysema or obstruction. Apportionment would be contrary to the law, and the obstruction would be compensable, particularly with coworkers' pneumoconiosis. Every witness testifies it's coal mine dust wrapped in scar tissue with a halo of emphysema. If you have pneumoconiosis, you have emphysema. So if you have pneumoconiosis, that three-year barrier is broken because of the pneumoconiosis. It joins with the other emphysema and can't be apportioned. Again, for Mr. Burnett to win a reversal in this case, I have to have convinced this Court that the Commission was wrong in not finding pneumoconiosis. I ask the Court to reverse this denial as being against the manifest way to the evidence as it regards pneumoconiosis, to find that all Petitioner's impairments of which CWP is a part are compensable, and to remand this case back to the Commission for determination to a major extent. Thank you. Thank you, Counselor. Counselor, you may respond. Thank you. May it please the Court? Mr. Bristow, Bob Muller on behalf of Monterey Coal Company. Obviously, the arbitrator ruled that this guy did not develop an occupational lung disease. The Commission affirmed. The Circuit Court affirmed. Needless to say, my position is that you also should affirm. The arbitrator relied on, as has been noted already, Dr. Tudor, Dr. Wyatt, and Dr. Shipley. My one point I would like to make is that evidence from those doctors is certainly all competent evidence. They are all board-certified doctors. The two B-readers are board-certified radiologists. Dr. Tudor is board-certified in internal medicine and pulmonary diseases. He was the director of the Pulmonary Function Lab at Washington University School of Medicine for 18 years at the time of the deposition. I would also point out that the arbitrator does indicate in her decision that Dr. Tudor's evaluation of this guy was more thorough than that of Dr. Paul. There was a question raised as to what that meant. There was an exercise study done in the course of Dr. Tudor's evaluation, which was not done in the course of Dr. Paul's evaluation. As part of the exercise, there was an arterial blood gas study done both at rest and with exercise. Again, those studies were not done by Dr. Paul. Obviously, Dr. Tudor indicated that he found no evidence of co-workers' pneumoconiosis, and that was corroborated, in my opinion, by the B-reading of Dr. Wyatt and the CT reading by Dr. Shipley. What do you make of Mr. Ressour's argument that only one doctor out of all the doctors in the case did not find abnormalities consistent with CWP? What's your response to that argument? I did not catch that argument, Your Honor. I did catch it. But in response to the question, as I just pointed out, the three doctors I mentioned did not find any evidence of CWP. He said abnormalities, I believe is his comment, consistent with CWP. Is that true? Okay, I understand now what you're asking. He was saying that Dr. Wyatt did not find any abnormalities at all, and the other doctors found abnormalities consistent with pneumoconiosis. I disagree with that. I don't think they did. If they had, why would they say they didn't find evidence of pneumoconiosis? That doesn't make sense to me, Your Honor. I'm sorry. That was just his question. But I'm responding. I don't see how that, if these three doctors say they didn't find evidence of CWP, how were their abnormalities consistent with CWP? We'll have to ask him a rebuttal. Fair enough. Anyway, Dr. Tudor indicated, as I said, no CWP, corroborated by the two B readers. He also indicated, of course, that this guy had, by definition, chronic bronchitis. He indicated that was due to his long-term cigarette smoking, which both he and Dr. Paul indicated was very significant in length, amount, et cetera. But important two things, I guess. Number one, the number one cause of chronic bronchitis in the United States is cigarette smoking. But number two, this guy's cardiologist, Dr. Zook, indicated that he had COPD because of prior tobacco abuse. Again, corroboration for what Dr. Tudor testified to. That's in the medical records from the treating doctor. I mean, one thing I wanted to say before I conclude, I completely disagree with the argument raised with regard to the statute of limitations and how the barrier is broken. I don't think that's true at all. And with regard to anything else in that regard, if necessary, I'll rely on my brief. But as to the argument with regard to occupational lung disease, I think there's plenty of evidence in the record to support what the arbitrator said, what the commission ruled, and it's not against the manifest weight of the evidence. I would ask that you affirm. Thank you very much. Thank you, counsel. Counsel will reply. Just very briefly, Justice Hudson, there was one other besides Dr. Wyatt who didn't find something consistent with pneumoconiosis. Tudor said bronchiectasis. My point would be Wyatt and Tudor didn't read the same thing. Wyatt says there's nothing there. Tudor says it's bronchiectasis. Now, the rest of them had either fibrosis, opacities, interstitial changes, or a scar somewhere in the report. So all but Tudor and Wyatt. And Tudor and Wyatt disagreed. And here's my question, and I think this question is the case. Can you take the x-rays apart? Can you have a reader, four readers, who say no pneumoconiosis, no pneumoconiosis, no pneumoconiosis, and accept that part when you know that they're all wrong on the other stuff they read because they're all different? My feeling is that once a man is wrong on an x-ray, he's wrong on that whole x-ray. But that's not for me to decide. Thank you. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement. A written disposition shall issue.